BRISCOE, J., joined by KELLY, J. and MURPHY, J.
dissenting. •
I respectfully dissent. In my view, 21 U.S.C. § 848(q)(8) does not entitle state *1176 prisoners, such as Hain, to federally appointed and funded counsel to represent them in state clemency proceedings. Thus, I conclude that appellants Presson and Jackson are not entitled to reimbursement of their fees and expenses in connection with representing Hain in clemency proceedings before the Oklahoma Pardon and Parole Board.
I.
Appellants Presson and Jackson were appointed by the district court pursuant to § 848(q)(4)(B) to represent Hain in his federal habeas proceedings. After those proceedings were completed, Hain’s only remaining avenue of relief from his death sentence was to seek clemency from the Oklahoma Pardon and Parole Board and the Governor of the State of Oklahoma. Because the State of Oklahoma does not provide for appointment of counsel in such proceedings, Presson and Jackson filed a motion with the district court “ ‘seeking confirmation of [their] continuing obligation to represent’ ” Hain in his state clemency proceedings, and “ ‘to receive compensation for [their] time and expenses’ ” in doing so. Hain v. Mullin, 324 F.3d 1146, 1148 (10th Cir.2003) (quoting petitioner Hain’s brief), vacated by Hain v. Mullin, 327 F.3d 1177 (10th Cir.2003). The district court denied the motion, concluding that § 848(q)(8) does not encompass representation of a state prisoner in state clemency proceedings. Id.
Notwithstanding the district court’s order, Presson and Jackson proceeded to represent Hain in his state clemency proceedings. Hain was ultimately denied clemency and executed. Thereafter, Pres-son and Jackson submitted two Criminal Justice Act (CJA) payment vouchers to the district court seeking reimbursement of their fees and expenses incurred in representing Hain in his state clemency proceedings. The district court refused to approve the vouchers for payment. In the district court’s view, “Congress never intended for the federal government to pay attorneys for a state court defendant to pursue state remedies sought in state proceedings.” Aplt. Br., Attachment 1, at 4. Rather, the district court concluded, “Congress intended § 848(q)(8) to be read in light of § 848(q)(4)(B), which provides a right to counsel only in connection with federal proceedings brought pursuant to 28 U.S.C. § 2254 and 28 U.S.C. § 2255.” Id. at 5.
II.
Presson and Jackson have now appealed the district court’s order. They contend § 848(q)(8) encompasses state executive clemency proceedings pursued by a state capital defendant following the denial of federal habeas relief. Thus, they assert, they were obligated to represent Hain during his state clemency proceedings, and in turn are now entitled to reimbursement of the fees and expenses incurred in connection with that representation. The United States, whom we invited to participate in this appeal, disputes this interpretation of § 848(q)(8). The United States argues § 848(q)(8) was never intended by Congress to encompass state judicial or clemency proceedings.
Because the district court’s interpretation of a federal statute is at issue, we apply a de novo standard of review. Shawnee Tribe v. United States, 423 F.3d 1204, 1212 (10th Cir.2005). “As in all cases of statutory construction, our task is to interpret the words of the [statute] in light of the purposes Congress sought to serve.” Dickerson v. New Banner Inst., Inc., 460 U.S. 103, 118, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983). “[0]ur starting point must be the language employed by Congress, ... and we assume that the legislative purpose is expressed by the ordinary meaning of the words used.” American Tobacco Co. *1177 v. Patterson, 456 U.S. 63, 68, 102 S.Ct. 1534, 71 L.Ed.2d 748 (1982) (internal quotation marks and citations omitted).
As noted, Presson and Jackson were appointed to represent Hain pursuant to § 848(q)(4)(B), which provides, in pertinent part:
In any post conviction proceeding under section 2254 or 2255 of Title 28, seeking to vacate or set aside a death sentence, any defendant who is or becomes financially unable to obtain adequate representation .... shall be entitled to the appointment of one or more attorneys ... in accordance with paragraphs (5), (6), (7), (8) [of subsection (q) ]....
21 U.S.C. § 848(q)(4)(B). In turn, the extent to which they were obligated to represent Hain was outlined in § 848(q)(8):
Unless replaced by similarly qualified counsel upon the attorney’s own motion or upon motion of the defendant, each attorney so appointed shall represent the defendant throughout every subsequent stage of available judicial proceedings, including pretrial proceedings, trial, sentencing, motions for new trial, appeals, applications for writ of certiora-ri to the Supreme Court of the United States, and all available post-conviction process, together with applications for stays of execution and other appropriate motions and procedures, and shall also represent the defendant in such competency proceedings and proceedings for executive or other clemency as may be available to the defendant.
21 U.S.C. § 848(q)(8). The question posed in this appeal is whether the phrase “proceedings for executive or other clemency as may be available to the defendant,” as psed in § 848(q)(8), was intended by Congress to encompass state clemency proceedings. In other words, did Congress, through use of this phrase, intend to provide federally-funded counsel to represent state capital defendants in state clemency proceedings?
In answering this question, it is necessary to examine the phrase at issue in light of the statute as a whole. See Food and Drug Admin. v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 132, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000) (“It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.”) (internal quotation marks omitted). The reason for doing so is clear: “[a] provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme — because the same terminology is used elsewhere in a context that makes its meaning clear, or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law.” Koons Buick Pontiac GMC, Inc. v. Nigh, 543 U.S. 50, 125 S.Ct. 460, 467, 160 L.Ed.2d 389 (2004) (internal quotation marks and citation omitted).
Section 848 of Title 21 addresses generally the federal crime of engaging in a continuing criminal enterprise (CCE). Because the statute provides for the imposition of the death penalty in certain CCE cases, see 21 U.S.C. § 848(e), it contains a number of subsections outlining special procedures to be utilized in such cases, as well as in other federal capital cases. Included among those is a subsection providing for the appointment of counsel to any “defendant who is or becomes financially unable to obtain adequate representation ... at any time either ... before judgment ... or ... after the entry of a judgment imposing a sentence of death but before the execution of that judgment. ...” 21 U.S.C. § 848(q)(4)(A)(I), (ii). Once counsel is appointed in such a ease, the extent of their representation is outlined in § 848(q)(8). Not surprisingly, given § 848’s general focus on CCE and other *1178 federal capital cases, § 848(q)(8) expressly provides for federally-funded counsel to represent federal capital defendants through all of their trial proceedings (i.e., from the “pretrial proceedings” through “sentencing” and “motions for new trial”) and, if they are convicted, through the appellate process, the post-conviction process and, if necessary, any available clemency proceedings.[1] In sum, the intent of Congress is evident: all of the proceedings listed in § 848(q)(8) are federal proceedings.[2]
In my view, the inclusion of § 848(q)(4)(B) in the overall statutory scheme does nothing to alter the conclusion that Congress intended for § 848(q)(8) to encompass only federal proceedings. After all, the post-conviction proceedings listed in § 848(q)(4)(B), i.e., § 2254 and § 2255 proceedings, are necessarily federal in nature. Further, by the time state capital prisoners are appointed counsel under § 848(q)(4), they have already completed their state trial and appellate proceedings and, presumably, exhausted the available state post-conviction remedies. Thus, absent the granting of federal habeas relief resulting in a new state trial, the majority of the proceedings expressly listed in § 848(q)(8) have no applicability at all to state capital prisoners. Moreover, it cannot seriously be suggested that Congress intended, in the event a state capital prisoner obtains federal habe-as relief and is granted a new trial, to provide federally-funded counsel to represent that prisoner in the ensuing state trial, appellate, and post-conviction proceedings, even though those proceedings are expressly listed in § 848(q)(8).[3] Indeed, if that were true, we would have the *1179 odd, and potentially unconstitutional, result of a federal court (i.e., the federal district court that first appointed counsel pursuant to § 848(q)(4)(B)) effectively overseeing state proceedings.
Nor am I convinced that § 848(q)(8)’s reference to “executive or other clemency as may be available to the defendant” does anything to undermine the notion that Congress intended § 848(q)(8) to include only federal proceedings. To be sure, the federal government does not currently have in place, as do some states, a board with clemency authority independent from the executive. See generally Margaret Colgate Love, Relief from Collateral Consequences of a Criminal Conviction, Table # 1-Models for Admin, of the, Pardon Power in the U.S. (July 2005), http:/¡www. sentencingproject. org/rights— restorationltablel.html (noting that six states currently have in place an independent board that exercises pardon power). Seizing upon that fact, the majority concludes that the phrase “or other clemency as may be available” must have been intended by Congress to refer to state clemency proceedings. That conclusion, however, is flawed for at least three reasons. First, in most of the states that offer clemency proceedings, the power of clemency is exercised by the governor, either alone or with the assistance of an advisory board. See id. Thus, most of those proceedings would, like the federal model, be classified as “executive” clemency proceedings. Second, Congress, at the time it drafted § 848(q)(8), could reasonably have anticipated the availability of “other” avenues for federal prisoners to obtain clemency. For example, history establishes that Presidents have, from time to time, appointed boards to assist them in exercising their clemency authority. E.g., Paul J. Haase, “Oh My Darling Clemency”: Existing or Possible Limitations on the Use of the Presidential Pardon Power, 39 Am.Crim. L.Rev. 1287, 1302 (2002) (noting that “President Ford created a commission called the Presidential Clemency Board ... to review and facilitate clemency for those individuals that committed crimes related to the Vietnam War.”); Executive Order 9814, 11 Fed.Reg. 14,645 (1946) (order of President Truman establishing a three-member board to review convictions of persons under the Selective Training and Service Act of 1940 and to make recommendations for executive clemency). Further, it is an open question whether Congress itself has clemency authority independent from the President.[4] E.g., *1180 Todd David Peterson, Congressional Power Over Pardon & Amnesty: Legislative Authority in the Shadow of Presidential Prerogative, 38 Wake Forest L.Rev. 1225, 1226 (2003) (noting that “no court has ever ruled on the issue [of] whether Congress has any authority .. to exercise the pardon power itself’); Brian M. Hoffstadt, Normalizing the Federal Clemency Power, 79 Tex. L.Rev. 561, 611-13 (2001) (suggesting that Congress can exercise clemency authority by passing individual clemency bills). Thus, it is reasonable to conclude that Congress’s inclusion of the reference in § 848(q)(8) to “other clemency as may be available to the defendant” was intended to encompass these other potential forms of federal clemency, rather than state clemency proceedings. In other words, it is reasonable to conclude that Congress, in fashioning the language of § 848(q)(8) to encompass the broad range of proceedings that a federal capital defendant might utilize in order to obtain relief from his or her death sentence, intended to include not only federal executive clemency proceedings, but also other forms of federal clemency that might be available to such a defendant. Lastly, had Congress intended to provide federal funding to state capital defendants in state clemency proceedings, it could have done so in a simple and clear manner (e.g., “and proceedings for executive or other clemency, including state clemency proceedings, as may be available to the defendant”), rather than through a vague reference to “other clemency as may be available to the defendant.”
The legislative history, to the extent we need to rely on it, does nothing to negate the conclusion that Congress intended for § 848(q)(8) to encompass only federal proceedings. Section 848(q)(4)(B), which as noted provides for the appointment of federally-funded counsel to state capital prisoners seeking federal habeas relief, “was added to the bill very late in session and seemingly without floor debate.” King v. Moore, 312 F.3d 1365, 1368 (11th Cir.2002). In light of these circumstances, I agree with the Eleventh Circuit that it was “unlikely” that “Congress actually intended for section 848(q) to provide counsel, at federal expense, to state prisoners engaged in state proceedings.” Id. In other words, absent some type of express indication that Congress intended the addition of § 848(q)(4)(B) to significantly broaden the scope of § 848(q)(8), it is unreasonable in my view for us to interpret § 848(q)(8) in such a manner.
Finally, it is noteworthy that three of the four circuits that have reviewed the precise question now before us have concluded that § 848(q)(8) does not encompass federally-appointed counsel’s representation of a state capital prisoner in state proceedings. See Clark v. Johnson, 278 F.3d 459, 462-63 (5th Cir.2002) (concluding that § 848(q)(8) does not provide for federally-appointed counsel in state clemency proceedings); House v. Bell, 332 F.3d 997, 999 (6th Cir.2003) (reaching same conclusion with respect to state post-conviction proceedings); King, 312 F.3d at 1368 (reaching same conclusion with respect to state clemency proceedings); con *1181 tra Hill v. Lockhart, 992 F.2d 801, 803 (8th Cir.1993) (concluding that § 848(q)(8) encompasses state clemency proceedings, but conditioning payment in part upon showing that state provided no avenues for compensation to counsel). Although the Eighth Circuit (which the majority cites with approval) reached a contrary result in Hill, its reasoning is not convincing. Instead of carefully parsing the language of § 848(q)(8), the Eighth Circuit looked to the language of § 848(q)(10), which allows for attorneys appointed under § 848(q) to receive compensation for “reasonably necessary services,” and simply concluded that “ § 848(q) evidences a congressional intent to insure that indigent state petitioners receive ‘reasonably necessary’ competency and clemency services from appointed, compensated counsel.” 992 F.2d at 803. Further, although the Eighth Circuit attempted to narrow the scope of its decision by holding that federal compensation was available for counsel only “as part of a non-frivolous, federal habeas corpus proceeding” and only when “state law provides no avenue to obtain compensation for these services,” it did so again without any support in the language of § 848(q)(8). In short, the Eighth Circuit effectively performed a legislative function by molding § 848(q) to fit what it believed was a fair and equitable model for providing federally appointed and compensated counsel to state capital prisoners.
For these reasons, I conclude that Congress did not intend, through its enactment of § 848(q)(8), to provided federally-funded counsel to represent state capital defendants in state clemency proceedings. I therefore conclude that Presson and Jackson are not entitled to compensation under § 848(q) for the services they performed in representing Hain in his state clemency proceedings, and would affirm the district court’s ruling denying compensation.

. Indeed, the legislative history, which is discussed below, suggests that § 848(q)(8) was drafted exclusively with federal capital defendants in mind, and was not modified following the last-minute addition of § 848(q)(4).

. The majority suggests, citing Duncan v. Walker, 533 U.S. 167, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001), that it is inappropriate to assume that Congress intended for § 848(q)(8) to encompass only federal proceedings. The majority, however, reads too much into Duncan. At issue in Duncan was "whether a federal habeas corpus petition is an 'application for State post-conviction or other collateral review' within the meaning of” 28 U.S.C. § 2244(d)(2). 533 U.S. at 169, 121 S.Ct. 2120. In concluding "that an application for federal habeas corpus review is not ‘an application for State post-conviction or other collateral review,’ ” id. at 181, 121 S.Ct. 2120, the Court noted "[i]t would be anomalous, to say the least, for Congress to usher in federal review under the general rubric of ‘other collateral review' in a statutory provision that refers expressly to ‘State’ review, while denominating expressly both ‘State’ and ‘Federal’ proceedings in other parts of the same statute.” Id. at 173, 121 S.Ct. 2120. Here, the statute at issue, § 848, in contrast to § 2244, contains no express references to "State,” but clearly and expressly refers to federal court proceedings, specifically federal capital trials and federal habeas proceedings (including both § 2254 and § 2255 proceedings). Thus, the express language of § 848(q)(8) allows for no assumption other than that Congress intended to refer only to federal proceedings.

.I fail to see how the majority can reasonably interpret the phrase "executive or other clemency” to include state clemency proceedings without also interpreting the remainder of the proceedings listed in § 848(q)(8) to include state proceedings. Thus, in my view, the majority's interpretation of § 848(q)(8) opens the door for federal funding of counsel to represent state defendants in retrials and subsequent proceedings. Curiously, the majority attempts to downplay the impact of its ruling by suggesting that, if a state habeas petitioner is granted a new trial, he or she "would almost certainly receive constitutionally guaranteed counsel [from the state], and thus would no longer be 'unable to obtain adequate representation’ under the statute.” That ignores, however, the fact that § 848(q)(4)(B) hinges on a state habeas petitioner’s financial ability to obtain adequate representation, and not upon the availability of adequate representation through other means. Because the vast majority of state *1179 habeas petitioners are indigent, their financial inability to obtain adequate representation means that § 848(q)(4)(B) would continue to apply in the event that they obtain federal habeas relief and are granted a new state trial. Further, § 848(q)(8) would mandate that federally-appointed counsel continue to represent state habeas petitioners in state court until they were "replaced by similarly qualified counsel upon the attorney’s own motion or upon motion of the defendant....” Therefore, it is entirely foreseeable that a successful state habeas petitioner would want to continue to be represented in state court by his or her federally-appointed counsel, and thus would not file any such motion for substitution of counsel.

. The majority, citing Article II, § 2, cl. 1, of the Constitution, as well as the Supreme Court's decision in Schick v. Reed, 419 U.S. 256, 95 S.Ct. 379, 42 L.Ed.2d 430 (1974), suggests that Congress lacks authority to grant clemency to capital defendants. It is true that Article II, § 2, cl. 1 confers upon the President the "Power to grant Reprieves and Pardons for Offenses against the United States, except in Cases of Impeachment,” and that such power "cannot be modified, abridged, or diminished by the Congress.” Schick, 419 U.S. at 266, 95 S.Ct. 379. Significantly, however, these two sources are silent regarding Congress’s own authority to grant clemency. Although it can perhaps be argued that Article II, § 2, cl.l’s "express grant of pardon authority to the President implicitly precludes Congress from exercising similar authority itself,” "[t]his question has never been definitively resolved by the courts, and it *1180 is still a matter of dispute between the President and Congress.” Peterson, supra at 1268. Moreover, Congress "has long held the power to pass private [amnesty] bills,” Hoffstadt, supra at 609, and it is logical to conclude that the reference to "other clemency” in § 848(q)(8) includes this form of relief as well. That Congress thought there were other avenues for federal clemency aside from executive clemency is further bolstered by the fact that § 848(q)(8), and its reference to "other clemency,” was apparently drafted before the addition of § 848(q)(4)(B), and that subsection's inclusion of § 2254 habeas petitioners among those entitled to the appointment of federally-funded counsel.