**I.D.**

v.

**NH DEPT. OF EDUCATION.**

**I.D., by His Next Friends and Parents, W.D. and E.D., Plaintiffs,**

v.

**Charles MARSTON, Commissioner of the New Hampshire Department of Education, Defendant.**

**Civ. No. 91–155–M.**

United States District Court, D. New Hampshire.

Nov. 30, 1994.

Gregory R. Van Buiten, Burlington, VT, for plaintiffs.

Ann F. Larney, Concord, NH, for defendants.

## ORDER

McAULIFFE, District Judge.

By order dated July 30, 1992, the court entered partial judgment in accordance with a settlement agreement executed by plaintiffs and the Westmoreland School District. Defendant Commissioner Marston, who was not a party to the settlement agreement, then moved for summary judgment. After carefully reviewing the substance of plaintiffs' claims against Commissioner Marston and the terms of plaintiffs' settlement agreement with Westmoreland School District, the court held the claims against the Commissioner moot and dismissed the remaining case for lack of subject matter jurisdiction (document no. 57).

Plaintiffs now move the court to reconsider its finding of mootness and its order of dismissal. Commissioner Marston objects, arguing essentially that the Federal Rules of Civil Procedure neither contemplate nor authorize the relief requested by plaintiffs. He claims that plaintiffs' only remedy is an appeal to the Court of Appeals for the First Circuit. While Commissioner Marston's objection lacks merit on the grounds stated, the court nevertheless reaffirms its earlier conclusion regarding mootness.

# 320

## I. Motions to Reconsider.

The Commissioner argues that because Rule 60 of the Federal Rules of Civil Procedure applies in this situation, plaintiffs' motion must be denied because it does not fall within Rule 60's scope. The court disagrees.

 Plaintiffs assert that the court erred *as a matter of law* in holding their claims against Commissioner Marston moot. Accordingly, Rule 59(e) and not Rule 60 applies:

> It is settled law in this circuit that a motion which asks the court to modify its earlier disposition of a case solely because of an ostensibly erroneous legal result is brought under Fed.R.Civ.P. 59(e). (citations omitted) Such a motion, without more, does not invoke Fed.R.Civ.P. 60(b). *See Silk v. Sandoval*, 435 F.2d 1266, 1267 (1st Cir.), *cert. denied*, 402 U.S. 1012, 91 S.Ct. 2189, 29 L.Ed.2d 435 (1971) ("If the court merely wrongly decides a point of law, that is not 'inadvertence, surprise, or excusable neglect.'") (quoting Rule 60).

*Rodriguez–Antuna v. Chase Manhattan Bank Corp.*, 871 F.2d 1, 2 (1st Cir.1989).

 Before addressing the merits of plaintiffs' argument, however, the court must first determine whether their motion has been filed in a timely manner. Rule 59(e) provides that a motion to alter or amend judgment must be brought within 10 days after the entry of judgment. Here, judgment was entered on September 1, 1994. Plaintiffs filed their motion to reconsider on September 13, 1994, which was within the ten day period prescribed by Rule 59(e). *See* Fed. R.Civ.P. 6(a) ("When the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays, and legal holidays [here, Labor Day] shall be excluded in the computation.").

## II. The Merits of Plaintiffs' Argument.

The facts underlying this dispute have been recited on prior occasions and need be reiterated only generally. Defendant Marston is the Commissioner of the New Hampshire Department of Education. Plaintiffs E.D. and W.D. are I.D.'s parents. They allege that the Commissioner failed to reasonably accommodate their own handicaps, thereby denying them an opportunity to participate effectively in administrative hearings held under the IDEA relative to an appropriate educational placement for their son, I.D. Plaintiff E.D. (I.D.'s mother) requested accommodation of her own self-diagnosed learning disability, to include provision of a note-taker, modification of hearing schedules, and limitations on written materials presented at her son's IDEA hearing. Plaintiff W.D. (I.D.'s father) requested an indefinite delay of the due process hearing in order to accommodate his own need to recuperate from a recent heart attack.

After honoring plaintiffs' first request to delay their son's IDEA hearing, a so-called pre-hearing was rescheduled for November 1, 1991, to discuss outstanding issues and prepare for the formal due process hearing. A formal hearing was eventually scheduled to take place in January of 1992. W.D.'s subsequent request to again delay the hearing was denied. Likewise, most (but not all) of E.D.'s requests for accommodation were, after thoughtful consideration by the hearing officer, denied.[1]

---

1. The report prepared by the hearing officer provides some insight into the context in which this dispute arose. It also sheds light on the extent to which the Department of Education reviewed plaintiffs' requests for accommodation and the nature of the accommodations provided:

 > On November 1, 1991, parent delivered a letter to the hearing officer in which she asked for "§ 504 accommodation" because of an alleged handicap. Parent stated that she was impaired because of learning disability and attention deficit disorder.... Parent offered that she had been "self diagnosed" until the fall of 1991, when she had been evaluated by Eloise White, a psychologist. Parent did not have a written report, but stated that she would make the report available when she received it.
 > Parent offered essentially no evidence of either her disability or its effect on her ability to participate in due process. As parent is known to the hearing officer to be a person who runs a business advocating on behalf of disabled students and their parents in connection with special education matters and due process hearings, it was not readily evident that parent was in any-way prevented from participating on the same basis as any other individual. However, without reaching the issue of whether parent were [sic] disabled or not, or whether, if disabled, parent was substantially limited in one or more major life activities by reason

Because they were not completely satisfied with the accommodations provided, plaintiffs unilaterally refused to participate in I.D.'s placement hearings. But, eventually, they and the Westmoreland School District settled their dispute concerning I.D.'s educational program and placement, as well as all other issues arising under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq.

As mentioned, Commissioner Marston was not a party to that settlement agreement and plaintiffs wish to continue their suit against him. They seek a declaration that the Commissioner discriminated against them based upon their own alleged handicaps by failing to reasonably accommodate their claimed disabilities *during the IDEA due process hearings,* and they seek an award of general damages and attorneys' fees.

█ Plaintiffs argue that their settlement of the IDEA dispute does not moot the controversy regarding Commissioner Marston's alleged violations of section 504 of the Rehabilitation Act (29 U.S.C. § 794) and 42 U.S.C. § 1983. Specifically, plaintiffs say that because they have asked for monetary damages and attorneys' fees from Commissioner Marston (and not *just* a declaration that he violated their federally protected rights), a viable case or controversy exists. The court remains unpersuaded.

Despite their general request for monetary damages, plaintiffs have not described any actual harm suffered as a result of the Commissioner's alleged failure to accommodate them. Fairly read, the complaint alleges

that plaintiffs sustained unspecified damages stemming from Commissioner Marston's alleged denial of their right to participate effectively in their son's educational placement hearings. The purpose of those hearings was, of course, to determine the *educational needs of plaintiffs' child* and to resolve any disputes concerning appropriate placement. IDEA placement hearings, and attendant provision for parental participation, are not intended to vindicate any particular *independent* parental interests unrelated to the child's educational needs. Parental participation is certainly expected and statutorily encouraged, because the knowledge and desires of the child's parents are important in identifying the educational program best suited to meet the child's needs. In this case, plaintiffs' settlement agreement with the Westmoreland School acknowledges that plaintiffs' parental interests in obtaining an appropriate educational placement for I.D. were fully voiced and even fully vindicated, or at least were met to their eventual satisfaction.

Endeavoring to preserve their suit against the Commissioner, plaintiffs argue that their damages actually extend beyond deprivation of their right to participate effectively in the IDEA hearing. For example, E.D. claims that she was forced to refuse other IDEA related work opportunities offered her by other parents of handicapped children seeking advice and counsel at IDEA placement hearings. Even assuming, for argument's sake, that the Commissioner should have done more to accommodate E.D.'s alleged handicap during I.D.'s placement hearings

of the impairment, the hearing officer decided that resolution of some of parent's concerns could be found. The hearing was scheduled for January, giving parent ample time to read and digest written educational records. The hearing was scheduled in Keene, close to parent's home, from 9:30 a.m. to 4:00 p.m., a slightly shorter hearing day than usual, and involving less travel time for parent. Finally, the hearing days were spread to allow time for preparation. The hearing officer specifically advised parent that frequent breaks during the hearing would be taken so that she could organize her thoughts and notes. . . .

Over the strenuous objection of the district, the hearing officer continued the hearing to January 21. Parent indicated that she now had a copy of her evaluation report from Dr. White

at home. . . . [However,] parent did not provide the Deputy Commissioner with a copy of the evaluation report or provide any other information. . . . On January 20, 1992, having received no information from parent or her evaluator, the Deputy Commissioner informed parent that no further accommodation appeared necessary other than that provided by the hearing officer.

The hearing resumed on January 21, 1992, as planned. . . . Parent again objected to having the hearing go forward. . . . This request was denied. Parent was advised that if she chose to leave the hearing, the hearing officer intended to proceed without her. Parent removed herself from the hearing.

Decision of Hearing Officer Daly (February 7, 1992) pp. 3–5.

(which on this record is doubtful) failure to do so hardly constituted a determination that E.D.'s alleged handicaps would *never* be accommodated at future hearings.

This particular case is *sui generis*, and the Commissioner's decision was the product of a case-specific balancing of the need to achieve a quick and just resolution of I.D.'s educational placement needs, on the one hand, against the poorly demonstrated needs and desires of E.D. which, if further accommodated, would have resulted in substantial additional delay. The child's interests would have been harmed by further delay, and his interests were properly considered by the Commissioner to be more important, in this context, than E.D.'s interests. The record, in fact, more than hints that E.D.'s vague claims were interposed merely to cause delay. As for W.D.'s more pressing and seemingly more legitimate claims to accommodation, based on his need to recuperate, it is apparent that his claim to accommodation could have been met only by imposing an extensive postponement of I.D.'s placement hearing, again, to the substantial detriment of I.D. (and the school district).[2]

■ As the courts of this circuit have previously stressed, one of the primary purposes of the IDEA is to ensure the *speedy* resolution of disputes regarding educational placement of children with disabilities. *Amann v. Town of Stow*, 991 F.2d 929, 932 (1st Cir. 1993); *G.D. v. Westmoreland School District*, 783 F.Supp. 1532, 1535 (D.N.H.1992); *Bow School District v. Quentin W.*, 750 F.Supp. 546, 550 (D.N.H.1990). Unquestionably, the educational needs and welfare of the child are, and must remain, paramount. When parental interests conflict with the interests of the child, the child's interests and welfare ought to take precedence.

■ Here, the hearing officer concluded, after careful thought and in complete good faith, that I.D.'s interest in quickly resolving questions regarding his educational placement easily superseded W.D.'s interest in obtaining yet another postponement (of undetermined duration) and E.D.'s interest in having the hearings delayed and limited in time and content, and in requiring the state to provide her with note-takers and other accommodations (that is, *assuming* she could first demonstrate a legitimate disability warranting such accommodation). The hearing officer may fairly be viewed as having determined, under the specific circumstances of this case, that additional delays were simply not in the best interests of the child. That finding is fully supported by the record and is entirely consistent with both public policy and the hearing officer's implicit finding that E.D. and W.D. might well have been behaving in an obstructionist fashion in further-

---

2. The report of the hearing officer also provides insight into the decision-making process which ultimately gave rise to this action:

The decision of this hearing officer to conduct the hearing without parent was not made lightly. However, the following factors ... warranted taking such a step:
(a) Although parent may well possess a disability, it is not readily apparent how her disability so substantially interferes with a major life function as to deny her the opportunity to participate in the due process on behalf of her son, especially when accompanied by her husband and another individual, both of whom are prepared to assist her. Delaying the hearing even further while parent pursues an "appeal" of the Deputy's decision [not to provide further accommodations] would be a waste of time and would involve potential prejudice to the district.
(b) The hearing officer had already made accommodations which met most of parent's stated requirements. The requirement that the state hire someone to take notes for parent appears superfluous in view of the fact that she was accompanied by two individuals prepared to take notes and assist her. Thus it was not apparent how parent would be prejudiced by going forward with the hearing.
(c) Parent failed to provide information to the Deputy Commissioner, although specifically cautioned by the hearing officer to do so, and although given two chances to do so. Parent has never offered this hearing officer a single piece of evidence, other than her own statements, which would indicate how parent is disabled and what accommodations she might need.
(d) This matter, at parent's request, has already been significantly delayed, in part so that parent could request accommodation from the Department of Education. Parent has not made diligent use of the time offered, therefore I see no reason to prejudice the school district by allowing further delay.
Decision of Hearing Officer Daly (February 7, 1992) pp. 5–6.

ance of some personal interests unrelated to I.D.'s education.

Moreover, Plaintiff E.D.'s claim of lost employment opportunities is far too speculative to support a claim for damages.[3] The Commissioner's declination to further accommodate plaintiffs' alleged disabilities was made in the context of the need to resolve questions surrounding I.D.'s educational placement without undue delay. The academic year was passing and I.D.'s placement hearings had already been delayed on several occasions. Importantly, however, the Commissioner (through the hearing officer) did *not* rule that Plaintiff E.D.'s alleged disability would not be accommodated at any future hearings involving different students and/or different facts, assuming of course that E.D. could establish that she qualifies for accommodation under section 504 in relation to providing IDEA representation to others. There is simply no evidence (nor could there be) that E.D. was effectively precluded from participating in other IDEA hearings or that she sustained any damages stemming from the Commissioner's decision.[4]

The substantive questions presented in this case are not whether W.D. was entitled to another delay of the hearing or whether E.D. was entitled to a note-taker. Rather, the pertinent inquiry is: Were E.D. and W.D. deprived of the right to have effective input into the decision-making process relative to I.D.'s education because of the Commissioner's failure to accommodate their alleged disabilities? The answer, quite plainly, is no. The settlement agreement evidences that E.D. and W.D. not only effectively participated in the process, but negotiated a complete resolution, and were satisfied with its outcome. By agreeing to complete resolution of all IDEA issues, thereby resolving the related litigation or "appeal," plaintiffs mooted any claims that the process was deficient as to them, i.e. that their alleged disabilities were inadequately accommodated in that very process. Thus, plaintiffs' claims regarding alleged improprieties in the *means* by which they exercised their right to be involved in I.D.'s educational placement decisions are moot.

## III. Conclusion.

For the reasons stated herein and in the court's order dated August 29, 1994 (document no. 57), plaintiffs' claims against Commissioner Marston are moot by virtue of the settlement agreement between plaintiffs and the Westmoreland School District. Plaintiffs' motion to reconsider order of dismissal (document no. 59) is denied.

SO ORDERED.

---

**3.** The court notes that plaintiffs' complaints merely allege that Commissioner Marston's conduct caused them "harm," for which they seek damages. *See* Complaints filed in civil cases 91–155, 91–707, and 92–133, all of which have been consolidated into the instant proceeding. Only in response to the court's July 30, 1994, order have plaintiffs attempted to articulate the nature and scope of their claimed damages and, in so doing, advanced the theory regarding E.D.'s potential lost employment opportunities.

**4.** Even if plaintiffs' claims were not moot, and they prevailed at trial, an award of even nominal damages under section 504 would likely be inappropriate. *Cf. Carey v. Piphus,* 435 U.S. 247, 266, 98 S.Ct. 1042, 1053–54, 55 L.Ed.2d 252 (1978) (holding that violation of the "absolute" right of procedural due process, without proof of actual harm, warrants award of nominal damages). Here, however, plaintiffs' alleged right to accommodation (an essential aspect of due process in appropriate circumstances) was not "absolute," insofar as it required a balancing of many pertinent factors and because accommodations, to the extent required, need only have been reasonable. *Southeastern Community College v. Davis,* 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979). Thus, unlike in *Carey,* plaintiffs' alleged right to accommodation *does* "depend upon the merits of claimant's substantive assertions." *Carey,* 435 U.S. at 266, 98 S.Ct. at 1053–54.