# United States Court of Appeals
## For the First Circuit

---

No. 00-1044

TREVOR NEVERSON,

Petitioner, Appellant,

v.

LYNN BISSONNETTE,

Respondent, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Reginald C. Lindsay, U.S. District Judge]

---

Before

Selya, Circuit Judge,

Coffin and Stahl, Senior Circuit Judges.

---

John M. Thompson, by appointment of the court, with whom Trevor Neverson, pro se ipso, was on brief, for appellant.
William J. Meade, Assistant Attorney General, Commonwealth of Massachusetts, with whom Thomas F. Reilly, Attorney General, was on brief, for appellee.
Brenda M. O'Malley, Attorney, Office of Immigration Litigation, U.S. Dep't of Justice, with whom David W. Ogden, Acting Assistant Attorney General, and Terri J. Scadron, Senior Litigation Counsel, were on brief, for provisional respondent (Commissioner, Immigration and Naturalization Service).

---

August 20, 2001

---

**SELYA, Circuit Judge.** In 1987, a Hampden County, Massachusetts grand jury indicted petitioner-appellant Trevor Neverson, a native of Trinidad, for the murder of his fifteen-month-old stepdaughter, Leshawna Wright. His first trial resulted in a court-ordered judgment of acquittal as to so much of the indictment as alleged first-degree murder. The trial judge sent the remaining charges (second-degree murder and the lesser included offense of manslaughter) to the jury. The jury deadlocked and the judge declared a mistrial. The petitioner's subsequent attempts to terminate the case on grounds of evidentiary insufficiency and double jeopardy were unavailing. See Neverson v. Commonwealth, 546 N.E.2d 876 (Mass. 1989) (affirming lower court rulings).

On retrial, a new jury found the petitioner guilty of manslaughter. The trial judge sentenced him to serve a lengthy prison term. The conviction and sentence were affirmed on appeal. See Commonwealth v. Neverson, 619 N.E.2d 344 (Mass. App. Ct.), rev. denied, 622 N.E.2d 1364 (Mass. 1993).

On August 28, 1996, the petitioner repaired to the federal district court and filed an application for habeas corpus relief under 28 U.S.C. § 2254 (Petition No. 1). On December 24, 1996, the district court (O'Toole, J.) dismissed the petition without prejudice because it contained some

unexhausted claims.  See Rose v. Lundy, 455 U.S. 509, 522 (1982) (holding that a federal habeas court ordinarily should not adjudicate a "mixed" petition, i.e., one containing both exhausted and unexhausted claims); Adelson v. DiPaola, 131 F.3d 259, 261-62 (1st Cir. 1997) (same).  The petitioner initially filed a notice of appeal, but apparently thought better of it and withdrew the appeal on September 3, 1997.

In the meantime, the petitioner moved for a new trial in the state court.  He filed his motion on July 11, 1997, but the state trial judge denied it, and the petitioner's efforts to overturn that adverse ruling came to naught.  See Commonwealth v. Neverson, 699 N.E.2d 28 (Mass. App. Ct.) (table), rev. denied, 700 N.E.2d 544 (Mass. 1998) (table).

On August 17, 1998, the petitioner returned to the federal district court and filed the instant application for habeas relief (Petition No. 2).  On October 13, 1998, the respondent, a state correctional official, moved to dismiss the petition as time-barred under 28 U.S.C. § 2244(d)(1).  The district court (Lindsay, J.) dismissed Petition No. 2 as untimely.  The court simultaneously granted a certificate of appealability (COA), 28 U.S.C. § 2253(c), on two issues:  (1) Does the pendency in federal court of a prior dismissed habeas petition toll the statute of limitations for the purposes of a

subsequent petition? (2) Does the filing of a subsequent habeas petition relate back to a prior petition which raised the same issues, but was dismissed without prejudice? The petitioner promptly perfected an appeal.

After an initial round of pro se briefing, we appointed counsel and set a new briefing schedule. At about the same time, a new development occurred. The petitioner had entered the United States illegally in 1985. In 1994, the Immigration and Naturalization Service (INS) sought to deport him for this illegal entry. See 8 U.S.C. § 1227(a)(1)(B). Three years later, the INS lodged an additional charge based on his commission of an aggravated felony (the manslaughter conviction). See id. § 1227(a)(2)(A)(iii). The necessary administrative proceedings resulted in a finding of deportability and a denial of the petitioner's applications for adjustment of status and/or waiver of deportability.

The petitioner completed his term of immurement on the manslaughter conviction in the spring of 2000. Because the deportation proceedings were still hanging fire, the INS took him into custody. On August 31, 2000, the petitioner asked us for a stay of deportation. We granted the stay temporarily and agreed, in effect, to treat the INS as a provisional respondent in the pending appeal, so that a nettlesome issue — whether

deportation would moot the petitioner's habeas appeal — could be considered. Expedited briefing on this issue followed.

Neverson's appeal was consolidated for oral argument with a case containing a similar limitation issue, namely, Delaney v. Matesanz, No. 99-1972. We heard oral argument in both cases on November 9, 2000. Four days later, the Supreme Court granted certiorari to review the decision of the United States Court of Appeals for the Second Circuit in Walker v. Artuz, 208 F.3d 357 (2d Cir. 2000), cert. granted sub nom. Duncan v. Walker, 121 S. Ct. 480 (2000). Because that case squarely raised the question of whether 28 U.S.C. § 2244(d)(1) — the one-year limitation period enacted as part of the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996) — could be tolled by the pendency of federal as well as state post-conviction proceedings, we stayed both Neverson's and Delaney's pending appeals. The Supreme Court spoke on June 18, 2001, see Duncan v. Walker, 121 S. Ct. 2120 (2001), and we vacated the stay ten days later. We now resolve Neverson's appeal (reserving Delaney's case for treatment in a separate opinion).

As all parties recognize, the AEDPA applies to this case. Congress enacted that statute on April 24, 1996, in part to combat increasingly pervasive abuses of the federal courts'

habeas jurisdiction. <u>Felker</u> v. <u>Turpin</u>, 518 U.S. 651, 664 (1996). Among other things, the AEDPA imposed, for the first time, a limitation period applicable to state prisoners' habeas applications.[1] According to this provision, "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). This period of limitation normally begins to accrue on "the date on which the [state court] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." <u>Id.</u> § 2244(d)(1)(A).[2]

---

[1]Prior to the passage of the AEDPA, a state prisoner's habeas application could be dismissed on timeliness grounds only if the petitioner's delay had prejudiced the state's ability to respond. <u>See</u> Rule 9(a), 28 foll. § 2254; <u>see</u> <u>also</u> Richard H. Fallon, Jr. et al., <u>Hart and Wechsler's The Federal Courts and the Federal System</u> 162 (4th ed. Supp. 1999).

[2]In limited circumstances, one of three other accrual dates may apply, namely:

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action; [or] (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

The petitioner's manslaughter conviction became final before the AEDPA's effective date. In respect to such convictions, we have construed the AEDPA to encompass a one-year grace period within which state prisoners may file federal habeas petitions testing the constitutionality of convictions that became final before the AEDPA's effective date. Gaskins v. Duval, 183 F.3d 8, 9 (1st Cir. 1999) (per curiam); see also Duncan, 121 S. Ct. at 2130 n.1 (Stevens, J., concurring) (enumerating cases to like effect from other circuits). Accordingly, the petitioner had until April 24, 1997 to file his application for federal habeas relief. He docketed Petition No. 1 within that time frame, but that petition was dismissed and he voluntarily abandoned his appeal from the order of dismissal. He did not propound Petition No. 2 until August 17, 1998 (over a year after the grace period had expired). Hence, that petition was time-barred, as the district court ruled, unless some sufficiently excusatory circumstance existed.

The petitioner makes four efforts to salvage Petition No. 2: these efforts involve, respectively, statutory interpretation, the Suspension Clause, "relation back," and equitable tolling. We address them in order.

---

28 U.S.C. § 2244(d)(1)(B)-(D). None of these three scenarios exists here.

The petitioner's statutory interpretation argument implicates 28 U.S.C. § 2244(d)(2), which provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under [section 2244(d)]." Although this provision plainly tolls the limitation period from and after July 11, 1997 (the date upon which the petitioner moved for a new trial in state court), the one-year grace period already had expired by that date. Without more, then, Petition No. 2 was beyond the temporal pale. See Fields v. Johnson, 159 F.3d 914, 915-16 (5th Cir. 1998) (per curiam).

Seeking to avoid this pitfall, the petitioner contends that the reference in section 2244(d)(2) to "other collateral review" includes not only state collateral review proceedings but also federal habeas proceedings. Building on that foundation, he argues that the pendency of Petition No. 1 tolled the limitation period from the date of filing (August 28, 1996) to the date of the withdrawal of his notice of appeal (September 3, 1997). In his view, this hiatus, coupled with the tolling that accompanied his pursuit of post-conviction remedies in the state courts during the period from July 11, 1997 through July

-9-

27, 1998, rendered Petition No. 2 timeous (i.e., filed within one year of April 24, 1996, after subtracting "tolled" periods).

We reject this argument. To the extent that the petitioner asks us to determine what Congress meant when it wrote that the AEDPA's limitation period, 28 U.S.C. § 2244(d)(1), would be tolled while a state prisoner pursued "State post-conviction or other collateral review," id. § 2244(d)(2), the Supreme Court has answered that question for us. In Duncan, the Court made pellucid that the adjective "State" qualifies both of the phrases that follow. In the Court's view, section 2244(d)(2)

> protect[s] a state prisoner's ability later to apply for federal habeas relief while state remedies are being pursued. At the same time, the provision limits the harm to the interest in finality by according tolling effect only to "properly filed application[s] for State post-conviction or other collateral review."

Duncan, 121 S. Ct. at 2128 (emphasis supplied) (quoting statute). Thus, section 2244(d)(2), properly construed, "toll[s] the limitation period for the pursuit of state remedies [but] not during the pendency of applications for federal review." Id.

The Duncan Court's bellwether holding — that "an application for federal habeas corpus review is not an 'application for State post-conviction or other collateral

-10-

review' within the meaning of 28 U.S.C. § 2244(d)(2)," id. at 2129 — sounds the death knell for the petitioner's main argument. On this basis, we rule that the pendency of Petition No. 1 did not toll the limitation period (and, therefore, did not render Petition No. 2 timeous).

The petitioner's second effort to rescue Petition No. 2 hinges on his argument that so restrictive an interpretation of the statutory tolling provision renders the AEDPA's limitation period unconstitutional under the Suspension Clause, U.S. Const. art. 1, § 9, cl. 2. This argument is not foreclosed by Duncan, as it was not made to the Duncan Court.

We nonetheless do not reach the merits. The AEDPA limits the scope of habeas review, so that issues not included in a COA cannot be heard on appeal. Bui v. DiPaolo, 170 F.3d 232, 236-37 (1st Cir. 1999). Since the operative COA in this case (the one granted by the district court) made no reference to the Suspension Clause issue, that issue is not properly before us.

The petitioner's third effort to salvage Petition No. 2 rests on the notion that Petition No. 2 somehow "relates back" to Petition No. 1 (which was timely filed but dismissed without prejudice). The "relation back" doctrine derives from Federal Rule of Civil Procedure 15(c) (stipulating, inter alia, that

-11-

"[a]n amendment of a pleading relates back to the date of the original pleading when . . . the claim . . . asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading").  Absent a specific savings clause, however, a dismissal without prejudice leaves a habeas petitioner who asserts a "relation-back" claim — like any other plaintiff in a civil action — in the same situation as if his first suit had never been filed.  See <u>Lefkowitz</u> v. <u>Fair</u>, 816 F.2d 17, 21-24 (1st Cir. 1987); <u>see</u> <u>also</u> <u>Nat'l R.R. Passenger Corp.</u> v. <u>Int'l Ass'n of Machinists & Aerospace Workers</u>, 915 F.2d 43, 48 (1st Cir. 1990) (noting that the effect of dismissal without prejudice "is to render the proceedings a nullity and leave the parties as if the action had never been brought" (citation and internal quotation marks omitted)).

In all events, Rule 15(c) simply does not apply where, as here, the party bringing suit did not seek to "amend" or "supplement" his original pleading, but, rather, opted to file an entirely new petition at a subsequent date.  In short, there was nothing to which Petition No. 2 could relate back.[3]  <u>See</u>

---

[3]To be sure, the petitioner could have improved his position by requesting that the district court stay, rather than dismiss, Petition No. 1.  <u>See</u> <u>Duncan</u>, 121 S. Ct. at 2130 (Stevens, J., concurring) (observing that "there is no reason why a district court should not retain jurisdiction over a meritorious claim

Marsh v. Soares, 223 F.3d 1217, 1219 (10th Cir. 2000) (holding "relation back" doctrine inapplicable when initial habeas petition had been dismissed because there was no pleading to which the new petition could relate back); Warren v. Garvin, 219 F.3d 111, 114 (2d Cir. 2000) (same).

The petitioner's fourth effort to avoid the time bar depends on the availability of equitable tolling. This effort is less easily dispatched. The concurring opinion in Duncan furnishes support for the view that, in an appropriate case, equitable tolling may be available to ameliorate the rigors of section 2244(d)(1). There, Justice Stevens, writing for himself and Justice Souter, took the position that "neither the Court's narrow holding [in Duncan], nor anything in the text or legislative history of AEDPA, precludes a federal court from deeming the limitations period tolled for such a petition as a matter of equity." Duncan, 121 S. Ct. at 2130 (Stevens, J., concurring). The argument gains further momentum from pre-Duncan cases recognizing the theoretical possibility of tolling

---

and stay further proceedings pending the complete exhaustion of state remedies"); see also Zarvela v. Artuz, 254 F.3d 374, 380 (2d Cir. 2001); Freeman v. Page, 208 F.3d 572, 577 (7th Cir. 2000); Calderon v. United States Dist. Ct., 134 F.3d 981, 986-87 (9th Cir. 1998). Post-AEDPA, this will be the preferable course in many cases involving "mixed" petitions — and it may be the only appropriate course in cases in which an outright dismissal threatens to imperil the timeliness of a collateral attack.

section 2244(d)(1)'s one-year limitation period on equitable grounds, e.g., Davis v. Johnson, 158 F.3d 806, 810 (5th Cir. 1998), cert. denied, 526 U.S. 1074 (1999), and from a post-Duncan case to the same effect, namely, Zarvela v. Artuz, 254 F.3d 374, 379 (2d Cir. 2001). We note too that some courts have applied equitable tolling in connection with the AEDPA's one-year time limitation on the filing of habeas petitions by federal prisoners. E.g., United States v. Marcello, 212 F.3d 1005, 1010 (7th Cir.), cert. denied, 121 S. Ct. 188 (2000); Sandvik v. United States, 177 F.3d 1269, 1271-72 (11th Cir. 1999).

The petitioner, albeit inartfully, appears to have preserved his equitable tolling claim below, but the district court did not address it. He has renewed that claim on appeal. Given the lack of any findings on this potentially important issue, and the consequent lack of in-depth briefing, we believe that the course of prudence is to remand this case for further consideration in light of Duncan. The district court may hold an evidentiary hearing if it sees fit, and may direct further briefing. If the court concludes that equitable tolling is unwarranted as a matter of fact, it should again dismiss the petition as time-barred. If, however, the court determines that the petitioner has made a sufficient showing to warrant

-14-

equitable tolling, it must then resolve the unanswered legal question: Is equitable tolling available to extend the one-year limitation period specified in section 2244(d)(1)? We take no view on these, or any other, issues.

This leaves the stay of deportation question (which turns on whether deportation would moot or otherwise render nugatory the petitioner's habeas application). There is now an added complication: on June 20, 2001, the petitioner, who has been detained by the INS for well over a year, moved for release on bail. In view of the fact that remand is required, we think it best to leave intact the provisional stay of deportation for the time being, empowering the district court to inquire into the mootness question and extend, modify, or dissolve the stay, as it deems appropriate. Similarly, we do not act upon the bail motion, but transfer that motion to the district court for further consideration. In that regard, the court may wish to consult the Supreme Court's recent opinion in <u>Zadvydas</u> v. <u>Davis</u>, 121 S. Ct. 2491 (2001), for what guidance it may provide.

We need go no further. For the reasons stated, we vacate the order of dismissal and remand for further proceedings consistent with this opinion. The provisional stay of deportation entered on September 8, 2000 shall remain in effect

pending further order of either the district court or, if another appeal ensues, this court.

**<u>So ordered</u>.**