David PROULX, Petitioner,

v.

John MARSHALL, Respondent.

David Proulx, Petitioner,

v.

Peter Pepe, Jr., Respondent.

Nos. CIV.A.95–40182–NMG, CIV.A.99–40129–NMG.

United States District Court, D. Massachusetts.

Dec. 21, 2001.

Richard J. Fallon, West Acton, MA, for David A. Proulx.

Annette C. Benedetto, Assist. Atty. Gen., Boston, MA, for Peter Pepe, Jr.

## MEMORANDUM AND ORDER

GORTON, District Judge.

Currently pending before this Court are Proulx's requests for Certificates of Appealability ("COAs") (Docket No. 57 in C.A. No 95–40182 and Docket No. 29 in C.A. No. 99–40129). Proulx seeks a COA to allow him to appeal from orders of this Court dismissing his first petition for a writ of habeas corpus (C.A. No. 95–40182) on July 13, 1998 and denying his motion to vacate that dismissal on September 25, 2000. Proulx also seeks a COA to allow him to appeal from orders of this Court dismissing his second petition for a writ of habeas corpus (C.A. No. 99–40129) on September 25, 2000 and denying his Motion for Relief from that Order of Dismissal on July 31, 2001. Proulx has also filed renewed motions for the appointment of counsel (Docket No. 58 in C.A. No. 95–40182 and Docket No. 31 in C.A. No. 99–40129).

## I. *Background*

### A. Factual and Procedural History

The following facts are summarized from a Memorandum and Order entered in

the earlier case by this Court on September 25, 2000.

On June 15, 1983, Proulx was indicted in Massachusetts state court for second-degree murder. Although a mistrial was declared during his first trial in October 1983, a jury convicted Proulx at the second trial in February, 1984. The trial judge sentenced Proulx to life in prison.

After his conviction and sentence, Proulx filed several motions seeking release from unlawful restraint and a new trial. Those requests were denied and the Massachusetts Supreme Judicial Court denied his subsequent Applications for Further Appellate Review ("ALOFARs").

On September 18, 1995, Proulx filed a petition for a Writ of Habeas Corpus ("the First Petition"). As a result of requests by Proulx and Respondent Marshall for extensions of time to file submissions in this Court, no ruling was made on his first petition until nearly three years after it was filed.

On July 9, 1998, this Court adopted the Report and Recommendation of Magistrate Judge Charles B. Swartwood that the First Petition be dismissed for Proulx's failure to exhaust his state remedies. Because only one of his twelve claims in the petition had not been exhausted, however, Proulx was given the option of (1) amending his First Petition to omit his unexhausted state claim so that this Court could review the remaining exhausted state claims or (2) pursuing his unexhausted claim in state court and abandoning collateral review.

Proulx elected to pursue his state remedies and filed a stipulation for voluntary dismissal of the First Petition which this Court allowed and which, in effect, barred federal collateral review as an avenue of relief for Proulx.

After Proulx exhausted his state claim, he filed in this court a second petition for a Writ of Habeas Corpus ("the Second Petition") on July 7, 1999. Respondent Pepe filed a motion to dismiss which this Court allowed on September 25, 2000 on the grounds that the Second Petition was time-barred by the statute of limitations in the Antiterrorism and Effective Death Penalty Act of 1996 ("the AEDPA").

**B. Summary of this Court's September 25, 2000 Memorandum & Order**

In its September 25, 2000 Memorandum & Order, this Court denied the Petitioner's motion to vacate the dismissal of his First Petition, dismissed Petitioner's Second Petition, and denied Petitioner's motion for appointment of counsel.

With respect to Petitioner's motion to vacate the dismissal of his First Petition, this Court found that because Petitioner filed a stipulation of voluntary dismissal of that petition, it would not reinstate it.

Addressing the Petitioner's Second Petition, this Court noted that, with respect to convictions that became final prior to April 24, 1996 (the effective date of the AEDPA), prisoners are entitled to a one year grace period from that date in which to file petitions for writ of habeas corpus. *See Gaskins v. Duval*, 183 F.3d 8 (1st Cir. 1999); 28 U.S.C. § 2244(d)(1). Because Proulx's conviction became final prior to the AEDPA's effective date, he was entitled to file his petition within the one year grace period which expired on April 24, 1997. This Court found that under a literal application of the AEDPA, Proulx's Second Petition was time-barred because it was filed on July 7, 1999, more than two years after the expiration of the grace period.

This Court also found that Proulx's First Petition did not act to toll the limitation period under § 2244(d)(2). That finding

has been confirmed by the Supreme Court in *Duncan v. Walker*, 533 U.S. 167, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001). *See also Neverson v. Bissonnette*, 261 F.3d 120, 123 (1st Cir.2001).

This Court also rejected Proulx's argument that the statute of limitations should be equitably tolled because of his confusion about the state court exhaustion requirement. Proulx argued that he had attempted to assert his claims but that he was prevented from doing so by this Court's delay in ruling on the First Petition. This Court noted that although the First Circuit had not yet decided whether the time limit set forth in § 2244(d)(1) is subject to equitable tolling, Proulx had not established the requirements necessary for the application of equitable tolling, namely, that (1) extraordinary circumstances prevented him from timely filing his Petition and (2) he exercised reasonable due diligence. This Court found that after electing to pursue his state remedies, Proulx "may not now return, after his failure in the state courts, and ask this Court in equity to toll the AEDPA's statute of limitations". *Proulx v. Marshall et al.*, 2000 WL 1448600, *3 (D.Mass.2000).

Because the AEDPA's statute of limitations barred Proulx's Second Petition, this Court did not address his motions to appoint counsel.

**B. Summary of this Court's July 31, 2001 Memorandum & Order**

In its July 31, 2001 Order, this Court denied the petitioner's Motion for Relief from the Order of Dismissal. This Court found that Petitioner's motion was untimely under Fed.R.Civ.P. 59(e) and improperly brought under Fed.R.Civ.P. 60(b).

This Court also found no merit to Petitioner's argument that his Second Petition for Habeas Corpus related back to his First Petition thereby tolling the statute of limitations set forth in § 2244(d).

**II. Discussion**

**A. Proulx's Requests for Certificates of Appealability (Docket No. 57 in C.A. No. 95–40182 and Docket No. 29 in C.A. No. 99–40129)**

Proulx asserts two arguments in his identical COA petitions. First, he argues that *Duncan v. Walker*, 533 U.S. 167, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001), does not apply to his case because, unlike the petitioner in *Duncan*, Proulx promptly returned to state court to exhaust his state remedies and his subsequent federal habeas petition contained claims that were identical to those in the First Petition. Second, Proulx argues that this Court should have applied the doctrine of equitable tolling to his Second Petition.

**B. Law Governing Certificate of Appealability**

Under federal statute, federal rules and the local rules for the First Circuit Court of Appeals, a habeas petitioner may not appeal the final order of a district court dismissing his petition unless he first obtains a Certificate of Appealability ("COA"). 28 U.S.C. § 2253(c)(1)(stating that a habeas petitioner may not appeal the district court's final judgment unless a "circuit justice or judge" issues a COA); Fed. R.App. P. 22(b)(stating that an appeal by a habeas petitioner may not proceed without the issuance of a COA by a district or circuit judge); Loc. R. 22.1(a), Rules of Court for the United States Court of Appeals for the First Circuit (stating that ordinarily a request for a COA should be made to the district court that dismissed the original petition).

Section 2253(c) of Title 28 of the United States Code, as amended by the AEDPA, provides that "[a] certificate of appealabili-

ty may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." In ruling on a motion for a COA, a district court must state which issues, if any, satisfy the standard set forth in § 2253(c)(2) or the reasons for its denial of the motion. Loc. R. 22.1(a).

■ Where a district court has rejected constitutional claims on the merits, the petitioner seeking a COA must show that (1) the issues are debatable among jurists of reason, (2) that a court could resolve the issues in a different manner, or (3) that the questions are "adequate to deserve encouragement to proceed further." *Smith v. United States*, 989 F.Supp. 371, 374 (D.Mass.1997)(*quoting Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983)).

When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claims, the standard for issuance of a COA is slightly different. The United States Supreme Court has held that in such cases the petitioner must, at least, show

> that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000). "Section 2253 mandates that both showings be made before the court of appeals may entertain an appeal." *Id.*

### C. Proulx's Petitions for Certificate of Appealability

In denying Proulx's § 2255 petitions, this Court did not reach the merits of his constitutional claims. The Court dis-

missed the First Petition because Proulx had filed a voluntary stipulation of dismissal and the Court dismissed the Second Petition as untimely. Therefore, in order for this Court to issue a COA it must find that (1) jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and (2) jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack*, 120 S.Ct. 1595, 1604 (2000).

### 1. Proulx's Petition for a COA in Case No. 95–40182 (Docket No. 57)

It is not debatable that this Court's dismissal of Proulx's First Petition was correct. This Court entered its Order of Dismissal only after Proulx voluntarily dismissed his First Petition having decided to pursue his remedies in state court. Proulx had a choice between (1) amending his First Petition to omit his unexhausted state claims which would have allowed him to proceed with this Court's review of his First Petition or (2) pursuing his unexhausted remedies in state court. Proulx elected to pursue his state claims and filed a motion to voluntarily dismiss his First Petition. This Court's dismissal and subsequent denial of Proulx's motion to vacate that dismissal were therefore correct.

### 2. Proulx' Petition for a COA in Case No. 99–40129 (Docket No. 29)

■ Reasonable jurists could not find this Court's procedural ruling on Proulx' Second Petition incorrect or debatable. First, the Supreme Court has established that an application for federal habeas corpus review does not toll the limitation period under § 2244(d)(2). *Duncan*, 121 S.Ct. at 2129. Proulx's Second Petition was therefore untimely.

Proulx's argument that *Duncan* does not apply to his case is unavailing. He

argues that because the petitioner in *Duncan* failed to pursue his claims in state court before returning to federal court and added new claims in his second federal habeas petition, that case is not applicable here. The holding in *Duncan* did not, however, depend on the petitioner's failure to return to state court or on his addition of new claims. The holding was based upon congressional intent in enacting the AEDPA as well as upon the principles of comity and finality of state court judgments. The Court recognized that tolling the limitation period for a federal habeas petition that is dismissed without prejudice would create opportunities for "delay and piecemeal litigation without advancing the goals of comity and federalism that the exhaustion requirement serves." *Duncan*, 121 S.Ct. at 2129. Those principles apply with as much force here as they did in *Duncan*.

█ Second, reasonable jurists could not find debatable this Court's ruling that the petitioner was not entitled to the benefit of equitable tolling in this case. Although the First Circuit has not decided whether equitable tolling is available under the AEDPA, it has recognized that the concurring opinion of the Supreme Court in *Duncan* acknowledged that equitable tolling may be available in some cases "to soften the rigors of section 2244(d)(1)." *Delaney v. Matesanz*, 264 F.3d 7, 14 (1st Cir.2001).

█ Even if the doctrine of equitable tolling were available, it would not apply here. Equitable tolling is applicable in extraordinary circumstances and only where circumstances beyond a litigant's control have prevented him from filing on time. *Delaney*, 264 F.3d at 15.

Proulx argues that the doctrine of equitable tolling should have been applied to his case because he was pursuing his claims diligently when the limitation period expired and because he is a pro se litigant unschooled in the law.

The First Circuit rejected similar arguments in *Delaney v. Matesantz*. There, it found that diligent pursuit of claims is insufficient to constitute extraordinary circumstances. *Delaney*, 264 F.3d at 15. The petitioner must show that he was somehow misled or "lulled into a false belief that he had more than the allotted time to file." *Id.*

Here, Proulx asserts that the Magistrate Judge had a duty to inform him that by returning to state court, his right to file a petition for habeas corpus "would be lost forever." Rather than dismissing Proulx's First Petition for failure to exhaust state remedies, the Magistrate Judge afforded him the option of either amending his First Petition to omit his unexhausted state claim so that this Court could review the remaining exhausted state claims, or pursuing his unexhausted state claim in state court and abandoning collateral review. This Court also afforded Petitioner a month to make his decision, and Proulx thereafter decided to return to state court to pursue his claims. This Court in no way misled the petitioner or lulled him into believing he had longer than the limitation period provided by § 2244(d)(1) in which to file his Second Petition.

Proulx's argument that this Court should have tolled the limitation period because of his status as a pro se litigant must also fail. The First Circuit has rejected the argument that a court should toll the limitation period due to ignorance of a pro se litigant. *Delaney*, 264 F.3d at 15. Proulx's identical argument here is without merit.

Proulx also requests a COA to appeal this Court's July 31, 2001 Order denying Petitioner's Motion for Relief from Order of Dismissal. It is undebatable that Peti-

tioner's Motion for Relief was untimely under Fed.R.Civ.P. 59(e) which requires a motion to amend or alter a judgment to be brought within 10 days of the entry of judgment. This Court's Order of Dismissal was entered on September 25, 2000, and Petitioner did not file his Motion for Relief until October 23, 2000. Rule 60 does not entitle Petitioner to relief because that rule does not apply to motions asking the court to modify earlier dispositions of a case solely because of an ostensibly erroneous legal result. *See I.D. v. New Hampshire Dept. of Education,* 878 F.Supp. 318, 320 (D.N.H.1994).

Even if Petitioner had timely filed his motion for relief, it was without merit. As stated above, this Court's dismissal of the Second Petition for untimeliness was consistent with the law established by the Supreme Court and the First Circuit. Proulx's assertion in that motion that his Second Petition relates back to the First Petition was properly rejected. The First Circuit has recently established that a petitioner cannot rely on the relation-back doctrine derived from Fed.R.Civ.P. 15(c) to salvage an untimely petition filed after a petition is dismissed without prejudice. *Neverson v. Bissonnette,* 261 F.3d at 124 (1st Cir.2001)(finding that because the first federal habeas petition was dismissed, "there was nothing to which Petition No. 2 could relate back").

### 3. Petitioner's Renewed Motion for Appointment of Counsel

Because the Petitioner filed a notice of appearance of attorney on October 23, 2001 (Docket No. 62 in C.A. No. 95–40182 and Docket No. 34 in C.A. No. 99–40129), this Court need not address the renewed motions for appointment of counsel.

### ORDER

For the reasons set forth in the memorandum above, Petitioner's requests for certificates of appealability (Docket No. 57 in C.A. No. 95–40182 and Docket No. 29 in C.A. No. 99–40129) and Petitioner's renewed motions for appointment of counsel (Docket No. 58 in C.A. No. 95–40192 and Docket No. 31 in C.A. No. 99–40182) are DENIED.

So ordered.