329 F.3d 1040
 Grace DONALD; Dawn Cooper, Plaintiffs-Appellants,
United States of America, Plaintiff-Appellee,
v.
UNIVERSITY OF CALIFORNIA BOARD OF REGENTS; U.C. Davis Health System; U.C. Davis School of Medicine; University of California Davis Medical, Defendants.
United States of America, Plaintiff-Appellee,
Debra Krahel; Pamela Medley, MD, Plaintiffs-Appellants,
v.
The Regents of the University of California, Defendant.
 No. 01-17039.
 No. 01-17118.
 United States Court of Appeals, Ninth Circuit.
 Submitted November 4, 2002.*
 Filed May 21, 2003.
 
 Stephen L. Meagher and Lisa A. Foster, Phillips & Cohen, LLP, San Francisco, CA; and Charles J. Stevens, Bradley A. Benbrook, Stevens & O'Connell, LLP, Sacramento, CA, were on the briefs for the plaintiffs-appellants.
 Robert D. McCallum, Jr., David W. Shapiro, Michael F. Hertz, Douglas N. Letter, and Alan E. Kleinburd, United States Department of Justice, Washington, DC, were on the briefs for the plaintiff-appellee.
 Appeal from the United States District Court for the Northern District of California; William H. Orrick, District Judge, Presiding. D.C. No. CV-01-01893-WHO, D.C. No. CV-96-01703-WHO.
 Before STAPLETON,** O'SCANNLAIN and FERNANDEZ, Circuit Judges.
 O'SCANNLAIN, Circuit Judge:
 
 
 1
 We must decide whether private individuals are entitled to share in the proceeds from a settlement with the federal government of a qui tam action brought against a state-run hospital system under the False Claims Act.
 
 
 2
 * Debra Krahel and Pamela Medley filed a qui tam suit ("Krahel") under the False Claims Act, 31 U.S.C. §§ 3729-3733, ("FCA") in the Northern District of California in May, 1996, against the Regents of the University of California ("Regents"). In their complaint, Krahel and Medley alleged that University of California teaching hospitals were fraudulently billing federal and state health insurance programs for services rendered by interns and residents as if they had been provided by faculty physicians. Grace Donald and Dawn Cooper brought a similar cause of action ("Donald") against the Regents in the Eastern District of California in December, 1999.[1]
 
 
 3
 Upon reviewing the complaint and disclosure statement of the Krahel relators,[2] the federal government successfully negotiated with the Regents for an audit of its five teaching hospitals, which took two years to perform. The Krahel and Donald relators claim that during this period, they diligently assisted government agents and attorneys in their investigation of the University of California medical centers.
 
 
 4
 Upon reviewing the results of the completed audit, the government engaged in settlement discussions with the Regents concerning the relators' qui tam actions. While these negotiations were ongoing, the government formally intervened in the Krahel case in July, 2000, and the Donald case in January, 2001. On January 31, 2001, the government and the Regents reached a settlement agreement for both causes of action in which the Regents agreed to pay the government $22.5 million in exchange for a release from liability for certain fraudulent practices, both under the FCA and under the common law.
 
 
 5
 The government notified the relators of the proposed settlement. Neither set of relators objected, and the government filed a notice of dismissal of the Donald action on March 16, 2001, and the Krahel action on March 19, 2001. The relators claim that they then engaged in talks with the government about the amount owed to them from the settlement proceeds.
 
 
 6
 Shortly thereafter, the government abruptly terminated settlement negotiations with the relators, citing the Supreme Court's holding in Vermont Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000), and claiming that it negated any statutory right that the relators had to a share of the settlement proceeds. The relators subsequently filed a joint motion in the district court for a share of the proceeds. Based on the Supreme Court's decision in Stevens, the district court determined that because the relators had no right to bring suit against the Regents in the first place, they had no right to recovery, and denied their motion. The relators timely appeal.
 
 II
 
 7
 On appeal, the relators renew their contention that the False Claims Act entitles them to a share of the proceeds from the government's settlement with the Regents.
 
 
 8
 * Following the direction of the Supreme Court in Duncan v. Walker, 533 U.S. 167, 172, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001), we begin our analysis with the language of the statute. The FCA imposes civil liability against "[a]ny person," who, inter alia, "knowingly presents, or causes to be presented, to an officer or employee of the United States Government ... a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a). The FCA authorizes a private person (a relator) to bring a qui tam civil action "for a violation of section 3729 for the person and for the United States Government ... in the name of the Government." 31 U.S.C. § 3730(b)(1). The FCA further provides: "If the Government proceeds with an action brought by a person under subsection (b), such person, shall ... receive at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim." 31 U.S.C. § 3730(d)(1).
 
 
 9
 Our analysis of the relators' claim is guided not only by the statutory language itself, but also by Stevens which held that a state or state agency is not a "person" for purposes of the FCA, and, therefore, not subject to liability for qui tam suits brought by private parties.[3] 529 U.S. at 787-88, 120 S.Ct. 1858. There, a relator brought a cause of action against the Vermont Agency of Natural Resources alleging that the state agency had submitted false claims to the Environmental Protection Agency in connection with various federal grant programs. Id. at 770, 120 S.Ct. 1858. The federal government declined to intervene in the qui tam action, and the Vermont Agency of Natural Resources moved to dismiss the suit, arguing that a state entity is not subject to suit under the FCA. Id. In granting relief to the defendant, the Court held that while individuals generally have standing under the FCA to bring suit on behalf of the government, the FCA "does not subject a State (or state agency) to liability in such actions." Id. at 787-88, 120 S.Ct. 1858.
 
 B
 
 10
 The relators argue that notwithstanding the Court's decision in Stevens, they have a statutory right to recovery. The relators point to the fact that the federal government intervened in their qui tam actions, and eventually reached a $22.5 million settlement with the Regents. The relators contend that under Stevens the Regents could have asserted a defense to FCA liability, but that by settling with the government, any potential defenses to liability were waived. As a result, the relators claim that § 3730(d)(1) entitles them to a portion of the government's settlement proceeds.
 
 
 11
 The relators further argue that the underlying reasoning of Stevens is inapplicable to their situation. Stevens held that state entities are not subject to liability under the FCA, in part, because of concerns of state sovereignty: "We must apply to this text our longstanding interpretative presumption that `person' does not include the sovereign. The presumption is particularly applicable where it is claimed that Congress has subjected the States to liability to which they had not been subject before." 529 U.S. at 780-81, 120 S.Ct. 1858 (citations and internal quotation marks omitted). Here, the relators claim that issues of state sovereignty are not implicated, and that the primary consideration is whether private parties should be able to share in the proceeds from a FCA settlement when the state elects not to assert a Stevens defense.
 
 
 12
 The relators finally claim that they are entitled to recovery because it is undisputed that they aided the government in pursuing a claim for fraud against the Regents. The relators' efforts — which began before the Court announced its decision in Stevens[4] — included filing the underlying qui tam suits against the Regents, providing written disclosure statements to the government, and assisting government agents and attorneys in their investigation of the U.C. teaching hospitals.
 
 
 13
 Regrettably for the relators, the plain language of the FCA precludes their statutory claim for relief.[5] In interpreting § 3729(a), the Stevens Court held that "various features of the FCA, both as originally enacted and as amended, far from providing the requisite affirmative indications that the term `person' included States for purposes of qui tam liability, indicate quite the contrary." Stevens, 529 U.S. at 787, 120 S.Ct. 1858. Section 3730(b)(1) further provides: "A person may bring a civil action for a violation of section 3729 for the person and for the United States Government." Because a state entity is not identified as a "person" for purposes of § 3729, the relators can claim no statutory basis under § 3730(b)(1) to bring suit against the Regents.
 
 
 14
 Finally there is § 3730(d)(1) which provides that the government is required to share settlement proceeds "[i]f [it] proceeds with an action brought by a person under subsection (b)." A private party, therefore, has a legal right to recovery only from a qui tam action brought pursuant to § 3730(b)(1), which is in turn dependent on the private party having a valid cause of action under § 3729(a). As a result, notwithstanding the inelegant actions of the government,[6] we are persuaded that the Court's holding in Stevens — that a private party may not bring a qui tam action against a state entity under § 3729(a) of the FCA — forecloses the relators' § 3730(d)(1) claim to a share of the proceeds from the government's settlement with the Regents.
 
 III
 
 15
 Accordingly, we agree with the district court that the relators can claim no statutory right to recovery under the FCA.
 
 
 16
 AFFIRMED.
 
 
 
 Notes:
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a)(2)
 
 
 **
 The Honorable Walter K. Stapleton, Senior United States Circuit Judge for the Third Circuit, sitting by designation
 
 
 [1]
 Eventually theDonald action was transferred to the Northern District of California for purposes of adjudicating it jointly with the Krahel action.
 
 
 [2]
 A relator is a private person authorized to bring suit for his own accord, as well as on behalf of the government
 
 
 [3]
 While it is undisputed that private individuals cannot bringqui tam suits against state entities under the FCA after Stevens, it is somewhat unclear whether suits brought by the United States are barred. Nothing in the Court's opinion purports to limit its scope solely to qui tam suits brought by private parties. Justice Ginsburg, in concurrence, noted that for purposes of statutory construction, "the clear statement rule applied to private suits against a State has not been applied when the United States is the plaintiff. I read the Court's decision to leave open the question whether the word `person' encompasses States when the United States itself sues under the False Claims Act." Stevens, 529 U.S. at 789, 120 S.Ct. 1858 (Ginsburg, J., concurring). Because this issue is not before the court, we need not decide it.
 
 
 [4]
 The Court's decision inStevens has retroactive application: "when [the Supreme] Court construes a statute, it is explaining its understanding of what the statute has meant continuously since the date when it became law." Rivers v. Roadway Express., Inc., 511 U.S. 298, 313 n. 12, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994). See also Harper v. Virginia Dept. of Taxation, 509 U.S. 86, 90, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993) ("[W]e hold that this Court's application of a rule of federal law to the parties before the Court requires every court to give retroactive effect to that decision."). Even though the relators brought their qui tam actions before Stevens was decided, we must retroactively apply its holding.
 
 
 [5]
 That the FCA does not provide the relators any right to recovery is also well-grounded in case law. InUnited States ex rel. Merena v. SmithKline Beecham Corp., 205 F.3d 97 (3rd Cir.2000), the relators brought a qui tam action that was disallowed by the public disclosure bar of § 3730(e)(4)(A). The government intervened in the defective qui tam action and reached a settlement agreement with the defendant. Subsequently, the Merena relators brought a cause of action claiming that they were entitled under § 3730(d)(1) to a share of the proceeds. As here, the government opposed the relators' claim, arguing that § 3730(e)(4) denied the relators any right to recovery.
 The court in Merena concluded "that a relator whose claim is subject to dismissal under section 3730(e)(4) may not receive any share of the proceeds attributable to that claim." Id. at 106. Likewise, we believe it unlikely that Congress intended that a private party is entitled to a share of settlement proceeds from a FCA action against a state entity while declining to authorize the private party to bring suit against the same state entity in the first place.
 Nor does United States ex rel. Barajas v. Northrop Corp., 258 F.3d 1004 (9th Cir.2001) indicate otherwise. There, the relator filed a qui tam action against Northrop alleging falsified and incomplete testing of flight data transmitters. Id. at 1006. The government intervened and entered into a settlement that released the company from all FCA claims, but did not release Northrop from future suspension or debarment proceedings. Id. at 1008. Prior to the settlement, Barajas had filed a second qui tam action alleging that Northrop had used damping fluid that failed to adhere to the government's specifications. The government declined to intervene in this second qui tam action, but the Air Force subsequently entered into a settlement agreement with Northrop. Id. After Barajas's second qui tam action was dismissed on the ground of claim preclusion, he filed a motion seeking a relator's share of the proceeds from the Air Force Agreement. We concluded that the Air Force Agreement was an "alternate remedy" to Barajas's second qui tam action, thereby entitling him to recovery under § 3730(c)(5).
 Nevertheless our holding in Barajas is of no aid to the relators. In granting relief to Barajas on his § 3730(c)(5) claim, we held that a "relator has a right to recover a share of the proceeds of the `alternate remedy' to the same degree that he or she would have been entitled to a share of the proceeds of an FCA action." Id. at 1010 (emphasis added). Barajas, therefore, does not lend support to the much broader proposition urged by the relators that private parties may recover proceeds procured by the government in a FCA action or settlement to which they have no entitlement under § 3729(a).
 
 
 [6]
 Indeed, the relators inform us that afterStevens was decided, in a separate qui tam action brought in South Carolina, the government settled rather than litigate whether the relator had a right to share in proceeds from its FCA settlement with a state university. But the narrow question before us is whether the relators are entitled to redress under the FCA, not whether the government has acted unfairly.