# United States Court of Appeals for the Federal Circuit

---

**ITSERVE ALLIANCE, INC., ADVANSOFT INTERNATIONAL, INC., ALLIED INFORMATICS INC., TECHSTAR CONSULTING SERVICES INC.,**
*Plaintiffs*

**ITECH US, INC., SMARTWORKS, LLC, SAXON GLOBAL, INC., KOLLASOFT INC., 3S BUSINESS CORP., VLINK INC., LUCID TECHNOLOGIES INC., IT DIVISION INC., DBA APEIRO TECHS, RAPIDIT INC.,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2023-1052

---

Appeal from the United States Court of Federal Claims in No. 1:21-cv-01190-RTH, Judge Ryan T. Holte.

---

Decided:  December 10, 2024

---

BRAD BANIAS, Banias Law LLC, Charleston, SC, argued for plaintiffs-appellants.  Also represented by JONATHAN WASDEN, Wasden Law, Burke, VA.

VINCENT DE PAUL PHILLIPS, JR., Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by BRIAN M. BOYNTON, ELIZABETH MARIE HOSFORD, PATRICIA M. MCCARTHY.

―――――――――

Before CHEN, STOLL, and CUNNINGHAM, *Circuit Judges*.

STOLL, *Circuit Judge*.

Plaintiffs seek a refund on the H-1B petitions they filed on behalf of their foreign national employees already admitted to and physically present in the United States under another nonimmigrant classification.[1] This appeal concerns whether Plaintiffs are entitled to this refund.

Plaintiffs appeal the decision of the United States Court of Federal Claims granting the Government's cross-motion for summary judgment. Plaintiffs argue that the language "an application for admission as a nonimmigrant under section 101(a)(15)(H)(i)(b) of the Immigration and Nationality Act (8 U.S.C. [§] 1101(a)(15)(H)(i)(b)) [("H-1B")], including an application for an extension of such status" excludes applications filed under that same statutory section to change the status of a nonimmigrant who is already in the United States—a so-called *change of status* petition. Appellants' Br. 7–8 (emphasis omitted). We disagree and thus affirm the trial court's decision.

BACKGROUND

I

The United States offers many different types of visas. This case involves H-1B visas awarded to

―――――――――

[1] We recognize that some parties are listed as Plaintiffs and others as Plaintiffs-Appellants. We use Plaintiffs for simplicity.

nonimmigrants—persons who are not citizens or nationals of the United States—who are sponsored by employers to work temporarily in qualified specialty occupations. *See* 8 U.S.C. § 1101(a)(15)(H)(i)(b). Under the H-1B program, the employer requests a grant of H-1B status on behalf of the nonimmigrant by filing a Form I-129 petition with the United States Citizenship and Immigration Service (USCIS). *See* 8 U.S.C. § 1184(c)(1); 8 C.F.R. §§ 103.2(a)(1), 214.2(h)(2)(i)(A). These requests can be made for nonimmigrants located inside or outside of the United States.

Relevant to this appeal are three types of Form I-129 petitions: (1) *initial grant* petitions, (2) *change of status* petitions, and (3) *extension* petitions. As the name implies, *initial grant* petitions refer to any petition where an employer requests on behalf of the nonimmigrant an initial grant of H-1B status. This petition typically involves a nonimmigrant currently residing outside of the United States who will then move to the United States to work temporarily in a qualified position once H-1B status is granted. However, *initial grant* petitions also include situations where the nonimmigrant already resides inside of the United States but is placed under H-1B status for the first time. These are *change of status* petitions. A *change of status* petition refers to when an employer requests on behalf of the nonimmigrant a change of status from another nonimmigrant classification to classification under H-1B. Because *change of status* petitions grant a nonimmigrant H-1B status for the first time, they are a sub-category of *initial grant* petitions. Finally, *extension* petitions request an extension of a nonimmigrant's already obtained H-1B status. These *extension* petitions, like *change of status* petitions, involve nonimmigrants already inside the United States.

When the nonimmigrant resides outside the United States and USCIS approves the H-1B petition, the nonimmigrant is then generally required to obtain an H-

4                                                    ITSERVE ALLIANCE, INC. v. US

1B visa from a United States consulate to enter through a port of entry and request "admission" into the United States as an H-1B nonimmigrant. *See* 8 U.S.C. §§ 1201(a)(1)(B), 1202(c); 22 C.F.R. §§ 41.53(a)(2), 41.101(a). The Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq.*, refers to this process as making an "application for admission":

> The term "application for admission" has reference to the application for admission into the United States and not to the application for the issuance of an immigrant or nonimmigrant visa.

*Id.* § 1101(a)(4). And the INA defines the term "admission":

> The terms "admission" and "admitted" mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer.

*Id.* § 1101(a)(13)(A).

Along with filing the petition, employers must pay all requisite fees. 8 C.F.R. § 103.2(a)(1). These requisite fees include a filing fee and a fraud prevention and detection fee (the "Fraud Fee"). The Fraud Fee is required with *initial grant* petitions, which includes *change of status* petitions, as well as employers seeking authorization for an H-1B nonimmigrant to change employers. 8 U.S.C. § 1184(c)(12)(A)(i)–(ii). Separately, if the employer qualifies as a 50/50 employer,[2] then Congress has

---

[2] "50/50 employers" refers to entities employing over 50 employees with over half comprising nonimmigrant workers in H-1B or L-1 status. *See* Act of Aug. 13, 2010, Pub. L. No. 111-230, § 402(b), 124 Stat. 2485, 2487 (2010); Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, § 402(g), 129 Stat. 2242, 3006 (2015). Plaintiffs here are 50/50 employers.

mandated that "the combined filing fee and [Fraud Fee]" is "increased by $4,000" (the "enhanced fee") under Public Law No. 114-113 ("2015 Enhanced Fee Statute"). Under an earlier statute, Congress mandated that the filing fee and Fraud Fee were increased by $2,000 for 50/50 employers through Public Law No. 111-230 (the "2010 Enhanced Fee Statute," and collectively, the "Enhanced Fee Statutes").

The 2010 Enhanced Fee Statute increased, for 50/50 employers, the filing fee and Fraud Fee required to be submitted with an H-1B "application for admission":

> (b) Notwithstanding any other provision of this Act or any other provision of law, during the period beginning on the date of the enactment of this Act and ending on September 30, 2014, the filing fee and fraud prevention and detection fee required to be submitted *with an application for admission as a nonimmigrant* under section 101(a)(15)(H)(i)(b) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(15)(H)(i)(b)) shall be increased by $2,000 for applicants that employ 50 or more employees in the United States if more than 50 percent of the applicant's employees are such nonimmigrants or nonimmigrants described in section 101(a)(15)(L) of such Act.

Pub. L. No. 111-230, § 402(b) (emphasis added). In 2015, Congress extended the timeframe for collecting the enhanced fee under the 2010 Enhanced Fee Statute and simultaneously increased that fee to $4,000:

> (b) Temporary H-1b Visa Fee Increase-- Notwithstanding section 281 of the Immigration and Nationality Act (8 U.S.C. 1351) or any other provision of law, during the period beginning on the date of the enactment of this section and ending on September 30, 2025, the combined filing fee and fraud prevention and detection fee required to be submitted with an application for admission as a

nonimmigrant under section 101(a)(15)(H)(i)(b) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(15)(H)(i)(b)), <u>including an application for an extension of such status,</u> shall be increased by $4,000 for applicants that employ 50 or more employees in the United States if more than 50 percent of the applicant's employees are such nonimmigrants or nonimmigrants described in section 101(a)(15)(L) of such Act.

Pub. L. No. 114-113, § 402(g) (annotated to show 2015 amendments).

## II

In January 2020, Plaintiffs filed a complaint in the United States District Court for the District of Columbia. The case was subsequently transferred to the United States Court of Federal Claims in April 2021. Once in the Court of Federal Claims, Plaintiffs filed an amended complaint seeking a declaratory judgment and order compelling the United States to return the fees that USCIS unlawfully exacted in violation of the Enhanced Fee Statutes. In September 2021, Plaintiffs filed a motion for summary judgment, arguing that USCIS violated the terms of the Enhanced Fee Statutes by exacting enhanced fees from 50/50 employers filing *change of status* petitions, which, Plaintiffs contend, are not "application for admission." In response, the Government filed a cross-motion for summary judgment, arguing that Congress intended to apply the enhanced fees to all H-1B petitions subject to the Fraud Fee, including *change of status* petitions.

The Court of Federal Claims denied Plaintiffs' motion for summary judgment and granted the Government's cross-motion for summary judgment. The trial court found that "[w]hen the statutory definitions of 'application for admission' and 'admission' are used, the result is incongruous with the text's imposition of an increased fee,

and the statutory definitions, therefore, must not apply to the [Enhanced Fee] Statutes." *ITServe All., Inc. v. United States*, 161 Fed. Cl. 276, 300 (2022). As such, the trial court looked to "[t]he plain language," which in its view, "suggests 'application' can mean 'petition,' as stated in 8 C.F.R § 1.2, and 'admission' can mean 'status,' as an H-1B nonimmigrant." *Id.* The trial court also found that the statutory structure of the Enhanced Fee Statutes "supports USCIS's authority to impose the increased fee on change of status petitions because those petitions are already subject to the fraud fee." *Id.* Based on this interpretation, the trial court concluded that the Government was entitled to judgment as a matter of law and accordingly granted the Government's cross-motion for summary judgment.

Plaintiffs appeal. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

"[A]n illegal exaction occurs . . . when the 'plaintiff has paid money over to the Government . . . and seeks return of all or part of that sum' that was 'improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation.'" *Boeing Co. v. United States*, 968 F.3d 1371, 1383 (Fed. Cir. 2020) (quoting *Virgin Islands Port Auth. v. United States*, 922 F.3d 1328, 1333 (Fed. Cir. 2019)). We review a grant of summary judgment by the United States Court of Federal Claims de novo. *Anderson v. United States*, 23 F.4th 1357, 1361 (Fed. Cir. 2022). We also review the trial court's statutory interpretation de novo. *Lambro v. United States*, 90 F.4th 1375, 1378 (Fed. Cir. 2024).

"In statutory construction, we begin with the language of the statute." *Kingdomware Techs. v. United States*, 579 U.S. 162, 171 (2016) (internal quotation marks and citation omitted). "[W]e are not guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *Dole v. United*

*Steelworkers of Am.*, 494 U.S. 26, 35 (1990) (quoting *Massachusetts v. Morash*, 490 U.S. 107, 115 (1989)). If the statutory language provides a clear answer, the inquiry ends there. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999). "Beyond the statute's text, [the traditional tools of statutory construction] include the statute's structure, canons of statutory construction, and legislative history." *Timex V.I., Inc. v. United States*, 157 F.3d 879, 882 (Fed. Cir. 1998).

We are tasked with a narrow question in this appeal: whether the statutory language "an application for admission as a nonimmigrant under [H-1B], including an application for an extension of such status," Pub. L. No. 114-113, § 402(g), excludes *change of status* petitions. We hold that this phrase does not exclude *change of status* petitions. Because a strict application of the statutory definitions for "application for admission" and "admission" would contradict the phrase "including an application for extension of such status" and thus render this language meaningless, we hold the ordinary meaning of "application for admission as a nonimmigrant under [H-1B], including an application for an extension of such status" applies. And the ordinary meaning of this phrase does not exclude *change of status* petitions. This interpretation of the statute also accords with agency practice, the backdrop against which Congress legislated.

I

Starting with the text of the statute, the enhanced fee is "required to be submitted with an application for admission as a nonimmigrant under [H-1B], including an application for an extension of such status." Pub. L. No. 114-113, § 402(b). Here, the INA defines the terms "application for admission" and "admission." 8 U.S.C. § 1101(a)(4), (a)(13)(A). And, as Plaintiffs argue, "[w]hen a statute includes an explicit definition, we must follow that definition, even if it varies from that term's

ordinary meaning." *Stenberg v. Carhart*, 530 U.S. 914, 942 (2000); *see also* Appellants' Br. 19–24. As such, we look to the statutory definitions.

The phrase "application for admission" refers to "the application for admission into the United States," 8 U.S.C. § 1101(a)(4), and the term "admission" itself means "with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *Id.* § 1101(a)(13)(A). Plaintiffs assert that, read with both definitions in the statute, the phrase "application for admission" refers to the applications for *physical entry* of the nonimmigrant *into* the United States from *outside* the United States. *See* Appellants' Br. 19–21. They explain that because *change of status* petitions involve only nonimmigrants already *inside* the United States who do not need to present themselves for inspection into the United States, it follows that *change of status* petitions are not subject to the enhanced fees under the Enhanced Fee Statutes. *See* Appellants' Br. 21–22. Plaintiffs' interpretation, however, does not square with the fact that Congress further included in the 2015 Enhanced Fee Statute "application[s] for an extension of [H1-B] status"—applications that, like *change of status* petitions, are granted only for nonimmigrants already inside the United States who have H1-B status. *See* Pub. L. No. 114-113; 8 C.F.R. § 214.2(h)(15)(i), (ii)(B). In fact, Plaintiffs' proposed construction results in a contradiction. It cannot be that Congress relied on a strict application of the statutory definitions to limit the collection of the enhanced fees only to "applications for admission" from nonimmigrants outside of the United States when Congress simultaneously set forth that the collection of the enhanced fees also applies to "applications for extension of such status" for nonimmigrants already in the United States. A correct interpretation must give meaning to the entire clause.

"It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)). To resolve the contradiction triggered by Plaintiffs' proposed construction, we would have to read "including an application for an extension of such status" to mean "including an application for an extension of such status *only when the nonimmigrant is not in the United States at the time of the application*." We decline to read in this condition without an express statement to that effect from Congress. It is "our duty to refrain from reading a phrase into the statute when Congress has left it out." *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993). "[W]ere we to adopt [Plaintiffs'] construction of the statute," the express inclusion of applications for an extension would be rendered "void, or insignificant." *Duncan*, 533 U.S. at 174. As such, "an application for admission" cannot limit the universe of applications to those only involving nonimmigrants outside the United States. We therefore reject Plaintiffs' strict adherence to the statutory definitions.

## II

Without the benefit of applicable statutory definitions, we return to resolve the ordinary meaning of the phrase: "an application for admission as a nonimmigrant under [H-1B], including an application for an extension of such status." *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 228 (2012) ("[W]here the [statutorily defined] meaning would cause a provision to contradict another provision, whereas the normal meaning of the word would harmonize the two, the normal meaning should be applied."). We understand this phrase to include *initial grant* petitions, which include *change of status* petitions, and *extension* petitions—

regardless of whether the nonimmigrant is located inside or outside of the United States. First, we address "application for admission" before turning to the amended language "including an application for an extension of such status."

With respect to "application for admission," we look to the general definitions of "application" and "admission" to aid our understanding of their ordinary meaning. The general definition for "application" as a noun includes "request" or "petition." *Application*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/application. And "admission" is defined as "the right or permission to join or enter a place, a group, etc." *Admission*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/admission. As such, the ordinary meaning for an "application for admission" is a request or petition for the right to join or enter a group. Nothing from this ordinary meaning requires, let alone connotes, the inside-outside of the United States distinction that Plaintiffs necessarily rely on to exclude *change of status* petitions.

Moreover, this ordinary meaning for "application for admission" is consistent with long-standing USCIS practice governed by the statute. In the unique context of this case, the "application" is the Form I-129 petition, which employers file on behalf of their nonimmigrant employee to request a grant of H-1B status, i.e., the right to enter a group of H-1B status holders. In truth, each party in this case seems to understand "application for admission" to refer to the Form I-129 petition. Both Plaintiffs and the Government repeatedly refer to the Form I-129 petition filed by employers with USCIS to request a grant of H-1B status for their nonimmigrant employee when discussing the "application for admission." *See, e.g.*, Appellants' Br. 5–6, 21, 35–36 ("The employer specifically notifies USCIS of its request to have the foreign national physically enter the United States by checking the

appropriate box on USCIS's standard Form I-129."); Appellee's Br. 5–9 (explaining that the employer files a Form I-129 petition with USCIS, on behalf of the nonimmigrant identified in the petition, and is required to pay the enhanced fees when it files the Form I-129 petition), 24–25 ("Employers file petitions with USCIS on Form I-129, as we explained above.  The question is therefore whether the word 'application' as used in the text should be construed as a petition to correspond with the Form I-129 petitions filed by employers.  The answer is that it must . . . .").  Moreover, employers complete the Form I-129 for all H-1B petitions, including *change of status* petitions, regardless of whether the nonimmigrant is inside or outside of the United States.  Applicants simply check different boxes for the type of petition being filed. J.A. 75, 128; Appellants' Br. 36–37, Appellee's Br. 42.  With this practice in mind, we continue to see no reason to exclude *change of status* petitions from the ordinary meaning of "application for admission."

More persuasive to our understanding of the ordinary meaning for "application for admission" is Congress's insertion of "including applications for an extension of such status" in the 2015 Enhanced Fee Statute.  This amendment bolsters our understanding of the statute in two respects.  First, the word "including" follows "application for admission as a nonimmigrant under [H-1B]" and introduces a non-exhaustive list of applications for admission that are subject to the enhanced fee.  Because Congress specified a non-exhaustive list of applications for admission that are subject to the enhanced fee, we understand "application for admission" to be the umbrella term that refers to all petitions for H-1B status.  Second, this amendment precludes Plaintiffs' inside-outside of the United States argument.  The non-exhaustive list of "applications for admission" includes at least "applications for an extension of [H1-B] status," i.e., *extension* petitions. And *extension* petitions involve nonimmigrants who are

already inside the United States; they do not involve physical admission. Thus, the "fee required to be submitted with an application for admission" cannot turn on physical admission into the United States and limit the universe of petitions to those involving only nonimmigrants outside of the United States. Like *extension* petitions, *change of status* petitions involve only nonimmigrants inside of the United States. Based on Congress's amendment, we fail to see why *change of status* petitions should be excluded from the universe of petitions covered by the Enhanced Fee Statutes. Instead, it appears Congress intended to collect the enhanced fees regardless of whether the nonimmigrant's physical location is inside or outside of the United States.

Finally, "[w]hen Congress used the materially same language in [the statute], it presumptively was aware of the longstanding [administrative] interpretation of the phrase and intended for it to retain its established meaning." *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 721–22 (2018) (first citing *Lorillard v. Pons*, 434 U.S. 575, 580–81 (1978) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change . . . ."), and then citing *Bragdon v. Abbott*, 524 U.S. 624, 645 (1998) ("When administrative and judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its administrative and judicial interpretations as well.")).

Here, it is evident from the 2015 amendment itself that Congress was aware of the USCIS practice to collect fees on petitions for H-1B status because Congress directly legislated that the enhanced fee applied to *extension* petitions. Indeed, the 2015 amendment added *extension* petitions under the umbrella of "application for admission," to which the increased fee applies. *See* U.S. Citizenship

and Immigration Services Fee Schedule and Changes to Certain Other Immigration Benefit Request Requirements, 84 Fed. Reg. 62280, 62322 (Nov. 14, 2019) (explaining that USCIS applied the 2010 increased fee "to petitions for an initial grant of status or requesting a change of employer, but not to extension petitions filed by the same employer on behalf of the same employee."). And to add *extension* petitions under the umbrella of "application for admission," Congress would need to know the petitions to which the enhanced fee originally applied. This original group of petitions included *initial grant* petitions, which include *change of status* petitions. This suggests Congress likely knew of the USCIS practice to collect fees on *change of status* petitions. Yet Congress still re-enacted the statute without altering the phrase "application for admission," suggesting that Congress was aware the enhanced fee would apply to *change of status* petitions in accordance with the USCIS practice. If Congress disagreed with how the statute was being applied, it could have changed the language of the statute, and it did not. *Cf. Lorillard*, 434 U.S. at 580–81.

For the reasons above, we conclude that the most reasonable interpretation of the statute does not exclude *change of status* petitions from the language "an application for admission as a nonimmigrant under [H-1B], including an application for an extension of such status." We therefore find the Enhanced Fee Statutes authorize USCIS to collect the enhanced fees from employers filing *change of status* petitions on behalf of their nonimmigrant employees already inside the United States under another status. Plaintiffs' illegal exaction claim thus fails as a matter of law. Accordingly, we affirm the trial court's grant of summary judgment in favor of the Government.

## CONCLUSION

We have considered Plaintiffs' remaining arguments and find them unpersuasive. For the reasons stated above,

we affirm the trial court's grant of the Government's cross-motion for summary judgment.

## AFFIRMED

### COSTS

No costs.